IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–02400–REB–KMT

SHANE JOHNSON,

      Plaintiff,

v.

JUSTIN DASH, individual and official capacity as case manager,
DONA ZAVISLAN, individual and capacity as warden,
DEBRA AHLIN, individual and official capacity as committee member,
JAMES OLSON, individual and official capacity as committee chairperson,
CARMEN ESTRADA, individual and official capacity as committee chairperson,
KATHLEEN BOYD, individual and official capacity as nurse practitioner,
DANIEL DE PRIEST, individual and official capacity as committee member,
KERI MCKAY, individual and official capacity as physician's assistant,
HELENE CHRISTNER, individual and official capacity ad nurse practitioner,
JUDITH BEEMAN, individual and official capacity as DOC infection central nurse, and
YVONNE SARGENT, individual and official capacity as CIPS input operator,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on Defendant Ahlin, Beeman, Boyd, Christner, Dahs,

DePriest, Estrada, Olson, Sargent, and Zavislan's[1] (hereinafter "Defendants") "Motion to Dismiss

Amended Complaint (Doc. 93) pursuant to Fed R. Civ. P. 12(b)(1) and (6) and/or for Summary

Judgment" (Doc. No. 100, filed Oct. 17, 2013 [Mot. Dismiss/Summ. J.]), Plaintiff's "Motion for

---

[1] Defendant McKay has not be served and therefore Plaintiff's claims against her are not
considered in this Recommendation.  An Order to Show Cause has been issued regarding
Plaintiff's failure to serve Defendant McKay.  (Doc. No. 128.)

Partial Summary Judgment" (Doc. No. 102, filed October 24, 2013 [First Mot. Summ. J.]), and

Plaintiff's "Second Motion for Partial Summary Judgment Pursuant to Rule 56" (Doc. No. 129,

filed Mar. 6, 2014 [Second Mot. Summ. J.]).

For the following reasons, the court RECOMMENDS that Defendants' Motion be

GRANTED in part and DENIED in part and that Plaintiff's Motions for Partial Summary

Judgment be DENIED without prejudice.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's "Ammended [sic] and Supplemented

Prisoner Complaint" (Doc. No. 93, filed Sept. 26, 2013 [Am. Compl.]) and the parties briefing

with respect to this Recommendation.  Plaintiff is an inmate with the Colorado Department of

Corrections (CDOC) currently incarcerated at Limon Correctional Facility (SCF).

### A.      *Factual Background for Claim One*

After having spent 300 or more days in administrative segregation at an unspecified

facility, Plaintiff was transferred to the custody of the CDOC on December 27, 2010.  (*See* Am.

Compl. ¶ 1.)  Plaintiff was initially placed at the Denver Reception and Diagnostic Center

(DRDC).  (*See id.*)  When Plaintiff arrived at DRDC, he was immediately assigned to

administrative segregation by Defendant Zavislan, the Warden at DRDC.  (*Id.*)  Plaintiff maintains

that Defendant Zavislan did not review the Plaintiff's confinement in administrative segregation

within a month; did not serve Plaintiff with "notice" until February 4, 2011; and did not give

Plaintiff an opportunity to present his "views" until February 8, 2011.  (*Id.* ¶ 3.)

On February 8, 2011, a classification hearing was held to officially place Plaintiff in administrative segregation.  (*Id.* ¶ 4.)  In reaching the decision to officially assign Plaintiff to administrative segregation, Defendant Ahlin, a member of the Administrative Segregation Committee, relied on evidence that was never provided to Plaintiff or submitted at the Administrative Segregation Hearing.  (*Id.*)

Plaintiff challenged this error in an action pursuant to Colorado Rule of Civil Procedure 106.5.  (*Id.*)  Unidentified "Prison Officials" apparently admitted the error and requested that the case be remanded for another classification hearing.  (*Id.*)

A second classification hearing was held on March 28, 2012.  (*Id.* ¶ 5.)  This time, Plaintiff maintains that Defendant DePriest, also a member of the Administrative Segregation Committee, relied on unspecified evidence to conclude that Plaintiff had escaped from a "maximum custody facility" by "breach[ing] a cell block[] and a security fence."  (*Id.* ¶ 6.)  Plaintiff maintains that not all inmates with escapes on their record are confined in administrative segregation—instead, only "the more serious cases" warrant assignment to administrative segregation.  (*Id.*)  Plaintiff contends that by considering the unspecified evidence above, it raised the "seriousness" of his escape.  (*Id.*)  Plaintiff also maintains that if he could have known of the document relied upon by Defendant DePriest beforehand, and called its author as a witness, he could have refuted Defendant DePriest's findings.  (*Id.*)

As a result of the March 28, 2012 hearing, Plaintiff was officially placed into administrative segregation.  (*See id.*)  According to Plaintiff, the conditions in administrative segregation are as follows:

3

> cell doors are solid metal w/metal strips along their sides and bottom which prevent [sic] conversation and communication; all meals are taken alone in the inmate's cell instead of a common eating area; all visits are conducted through glass walls; the light is on 24 hrs/day; exercise is for one hr/day but only in a small indoor room denying [Plaintiff] all outdoor exercise for 21 mos; confinement is indefinite in that there's no end date, no limit to how many times an inmate can be regressed or stalled and the periodic reviews as discussed below, are meaningless.

(*Id.* ¶ 8.)

At some unspecified juncture, Plaintiff was transferred from DRDC to Colorado State Penitentiary (CSP). At CSP, Defendant Dash, Plaintiff's case manager, and Defendants Estrada and Olson, members of the Administrative Segregation Committee, were responsible for periodically reviewing Plaintiff's confinement in administrative segregation. (*Id.* ¶ 9.) According to Plaintiff, his periodic reviews "did not specify the reasons why [he] was being recommended for or denied progression through the Quality of Life Level Program (QLLP)," a program that governs how inmates may progress out of administrative segregation. (*Id.* ¶ 9.)

**B.      *Factual Background for Claim Two***

On September 26, 2011, Plaintiff told Defendant Boyd, a Nurse Practitioner with CSP Clinical Services, that he had swelling, nausea, hypertension, yellowing eyes, and he was suffering daily pain serious enough to prevent him from reading, writing, or leaving his cell for activities. (*Id.* ¶ 17.) Defendant Boyd acknowledged that Plaintiff has chronic viral Hepatitis C. (*Id.* ¶ 18.) This treatment was to begin with a six-month drug and alcohol class. (*Id.*)

On March 7, 2012, Clinical Services received verification that Plaintiff had completed his drug and alcohol class, which was required before Plaintiff could obtain treatment for his Hepatitis C. (*Id.* ¶ 18-19.) On March 26, 2012, CSP Clinical Services assessed Plaintiff's Hepatitis C as

"acute" and found that Plaintiff required a blood draw to determine his genotype.  (*Id.* ¶ 20.)  After Plaintiff completed the blood draw, he did not hear back from CSP Clinical Services.  (*Id.*¶ 21.)  Plaintiff submitted two kites, on April 14 and April 23, 2012, to inquire about the hold-up in his treatment.  (*Id.*)  On May 3, 2012, Defendant Boyd responded that she needed a copy of Plaintiff's drug and alcohol class certification.  (*Id.* ¶ 22.)  Plaintiff noted the seriousness of his medical needs and responded that he had the certificate if Defendant Boyd needed a copy.  (*Id.*)

On May 16, 2012, Plaintiff received a kite from Defendant Boyd stating that he needed to contact "Mental Health" about the certificate of completion for the drug and alcohol class. (*Id.* ¶ 23.)  Plaintiff again expressed that his medical needs were serious and complied with her request by kiting Mental Health.  (*Id.*)

Plaintiff submitted additional requests for treatment on May 31, 2012 and again on June 7, 2012.  (*Id.* ¶ 24.)

On June 10, 2012, Plaintiff suffered severe pain in his joints and, therefore, submitted a kite to CSP Clinical Services; however, he did not mention his Hepatitis C for fear that Defendant Boyd would not see him.  (*Id.* ¶25.)  Plaintiff maintains that the sedentary lifestyle associated with his assignment to administrative segregation exacerbated his symptoms.  (*Id.*)

On June 19, 2012, Plaintiff met with Defendant Boyd, who evidently did not recognize Plaintiff.  (*Id* ¶ 26.)  When Defendant Boyd opened his medical file, Plaintiff saw a copy of the certificate of completion of the drug and alcohol class.  (*Id.*)  Plaintiff asked Defendant Boyd "Why am I not being treated for Hep C if you have the certificate." (*Id.*)  Defendant Boyd asked Plaintiff if he had Hepatitis C; Plaintiff responded "I'm Shane Johnson and I've been writing you

for months about it." (*Id.*)  Defendant Boyd responded "we need to find your genotype," even though Plaintiff's genotype had been requested in March 2012.  (*Id.*)

On July 21, 2012, Defendant Boyd stopped by Plaintiff's cell to have him sign a form that Plaintiff maintains he already signed.  (*Id.* ¶ 27.)  The next day, July 22, 2012, Plaintiff took an EKG that he maintain had already been conducted.  (*Id.* ¶ 28.)  Plaintiff continued to request testing and treatment, but received only one response and did not undergo any treatment.  (*Id.* ¶ 29.)

On September 14, 2012, Plaintiff was transferred from CSP to Sterling Correctional Facility (SCF) for "4B ad seg" confinement.  (*Id.* ¶ 30.)  Plaintiff filled out a "Request for Sick Call" to notify SCF medical staff that he had serious daily pain, swelling, nausea, and hypertension.  (*Id.*)

On September 18, 2012, Defendant McKay, a Physician's Assistant at SCF, reviewed Plaintiff's charts, which were replete with complaints regarding Plaintiff's Hepatitis C and associated pain.  (*Id.* ¶ 31.)  However, Defendant McKay did not treat Plaintiff for Hepatitis C or attempt to alleviate Plaintiff's pain.  (*Id.*)

Plaintiff submitted grievances on September 27, October 27, and December 6, 2012 complaining about his serious pain and the lack of any treatment for his Hepatitis C.  (*Id.* ¶ 32.)  On December 21, 2012, Defendant Christner, a Nurse Practitioner at SCF, met with Plaintiff, reviewed his charts, but did not treat Plaintiff's Hepatitis C or attempt to alleviate Plaintiff's pain. (*Id.* ¶ 33.)  That same day, Defendant Beeman, an "infection control nurse" at SCF, was made

aware of Plaintiff's Hepatitis C and pain, but did not treat or approve Plaintiff for Hepatitis C treatment and did not attempt to alleviate Plaintiff's pain.  (*Id.*)

On April 3, 2013, Plaintiff began "sporadic" treatment for his Hepatitis C.  (*Id.* ¶ 34.) However, Plaintiff maintains that there still has not been any attempt to alleviate his pain.  (*Id.*) Plaintiff alleges that each day he does not undergo treatment "adds irreparable damage to [his] liver, deteriorates [his] health, and endangers [his] life."  (*Id.* ¶35.)

**C.      *Factual Background for Claim Three***

On January 5, 2011, an official detainer for Plaintiff's escape charge was filed with the CDOC.  (*Id.* ¶ 39.)  Under Section 16-14-102 of the Colorado Revised Statutes, the superintendent of a penal institution where a prisoner is confined has a duty "to promptly inform [the] prisoner, in writing, of the source and nature of any untried indictment, information, or criminal complaint against him of which the superintendent has knowledge, and of the prisoner's right to make a request for final disposition thereof."  Colo. Rev. Stat. § 16-14-102(2).  A failure to discharge this obligation within one year after a detainer has been filed with the institution "shall entitle the prisoner to a dismissal with prejudice of the indictment, information, or criminal complaint."  *Id.* § 16-14-102(3).

Plaintiff alleges that this duty is delegated to an inmate's case manager.  Defendant Dash, however, did not "promptly" notify Plaintiff of the detainer for his escape charge.  (*Id.* ¶ 41.)  As such, Plaintiff moved to dismiss the escape charge with prejudice.  (*Id.*)

Shortly thereafter, Defendant Dash allegedly prepared a Program Assessment Summary (PAS) claiming that Plaintiff had been placed in administrative segregation because he

7

"assault[ed] a staff member that caused serious injury" and that Plaintiff's behavior posed a "serious threat to the safety of staff." (*Id.* ¶ 42.)  Plaintiff asserts that he never assaulted any staff member.  (*Id.* ¶ 44.)  Plaintiff maintains that Defendant Dash's objective was to claim that Plaintiff's administrative segregation classification was for this assault so as to prevent Plaintiff from claiming that his confinement in administrative segregation was not justified by the escape charge Plaintiff had moved to dismiss.  (*See id.* ¶ 43.)  Plaintiff also maintains that Defendant Dash prepared the PAS to thwart Plaintiff's motion to dismiss the escape charge.  (*Id.*)

The PAS was provided to the court at the hearing on Plaintiff's motion to dismiss.  (*Id.* ¶ 45.)  Based allegedly on the PAS, Plaintiff's motion to dismiss was denied; Plaintiff was ultimately convicted of the escape charge and sentenced to twelve years, to be served consecutive to his existing sentence.  (*Id.*)

**D.    *Factual Background for Fourth Claim***

On December 28, 2010, Plaintiff submitted a Colorado Inmate Phone System Offender Phone List (CIPS) to Defendant Sargent, the CIPS Operator, in an attempt to have his defense attorney approved for unmonitored phone calls.  (*Id.* ¶ 50.)  On January 28, 2011, Plaintiff's CIPS was returned as unapproved with note that requested more information and waived the 30-day wait requirement for Plaintiff's next submission.  (*Id.* ¶ 51.)

On January 29, 2011, Plaintiff submitted a second CIPS with the requested information. (*Id.* ¶ 52.)  On February 28, 2011, Plaintiff's second CIPS was returned to Plaintiff as unapproved with a note stating that Plaintiff violated the 30-day wait requirement.  (*Id.* ¶ 53.)

8

Plaintiff later sent a letter to his defense attorney advising him of the difficulties he faced in getting his CIPS approved, asking for his assistance in fixing the issue, and discussing "pressing concerns" regarding his criminal case. (*Id.* ¶ 54.) Plaintiff's attorney allegedly never received the letter. (*Id.*)

On March 3, 2011, Plaintiff submitted a third CIPS. (*Id.* ¶ 55.) Plaintiff did not receive a response to this CIPS. (*Id.*)

On May 19, 2011, Plaintiff sent a kite to Defendant Dash regarding the fact that his CIPS had not been approved. (*Id.* ¶ 56.) Plaintiff did not receive a reply from Defendant Dash. (*Id.*)

On June 2, 2011, Plaintiff submitted a fourth CIPS for unmonitored phone calls to his defense attorney. (*Id.* ¶ 57.) Plaintiff did not receive a reply. (*Id.*)

Plaintiff's defense attorney also allegedly made numerous attempts to reach Plaintiff. (*Id.*) Ultimately, on June 1, 2011, Plaintiff's attorney managed to set up a phone call to take place on June 6, 2011. (*Id.* ¶ 58.)

On that date, however, Defendant Dash notified Plaintiff that the phone call would have to take place in Defendant Dash's office, with Defendant Dash present, and via speakerphone. (*Id.*) Plaintiff inquired as to why he could not speak unmonitored on the prison phone, per the usual procedure, and stated that he had a hearing in a few days. (*Id.*) Defendant Dash responded that "the only phone you'll be using is in the office." (*Id.*)

When the call commenced, Plaintiff immediately notified his attorney of Defendant Dash's presence. (*Id.* ¶ 59.) Plaintiff's attorney asked Defendant Dash to speak with Plaintiff without Defendant Dash present. (*Id.*) Defendant Dash responded "that is not possible at this time." (*Id.*)

9

Plaintiff maintains that, as a result of Defendant Dash and Sargent's actions, he was unable to prepare a defense to the escape charge, and he and his attorney had to "sit by unprepared while trial proceeded against our requests for continuance." (*Id.*¶ 60.)  As discussed above, Plaintiff was found guilty of the escape charge and sentenced to twelve years consecutive.  (*Id.*)

## PROCEDURAL HISTORY

Plaintiff filed his initial Prisoner Complaint on September 10, 2012.  (Doc. No. 1.)  On May 16, 2013, Plaintiff filed a Motion for Leave to File Ammended [sic] and Supplemented Prisoner Complaint.  (Doc. No. 65.)  The court granted this motion on June 14, 2013.  (Order, Doc. No. 69 [June 14, 2013 Order].)

However, rather than filing Plaintiff's "Ammended [sic] and Supplemented Prisoner Complaint" (Doc. No. 60-1), the Clerk of Court mistakenly refiled Plaintiff's original Prisoner Complaint (*see* Doc. No. 70).  The court recognized this error on September 26, 2013 (*see* Minute Order, Doc. No. 92) and Plaintiff's Amended Complaint was properly filed that same day (*see* Am. Compl.).

In his Amended Complaint, Plaintiff asserts four claims for relief pursuant to 42 U.S.C. § 1983 and other federal statutes.  Claim One alleges a claim for violations of the Eighth and Fourteenth Amendment, based on his confinement in administrative segregation.  (Am. Compl. ¶¶ 1-16.)  Claim Two alleges violations of the Eighth Amendment; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 *et seq.*; and the Rehabilitation Act, 29 U.S.C. § 705 *et seq,*, based on the allegedly delayed and inadequate treatment of his Hepatitis C.  (*Id.* ¶¶ 17-37.).  Claim Three alleges a claim for retaliation and violations of Plaintiff's right of access to the courts under the

10

First Amendment, based on Defendant Dash's preparation of the PAS stating that Plaintiff had assaulted a prison staff member.  (*Id.* ¶¶ 38-49).  Finally, Claim Four alleges violations of the First, Sixth, and Fourteenth Amendments based on Defendant Dash's and Defendant Sargent's failure to provide Plaintiff with confidential telephonic communications with his defense attorney. (*Id.* ¶¶ 50-65).

Defendants' Motion to Dismiss and/or for Summary Judgment was filed on October 17, 2013.  (*See* Mot. Dismiss/Summ. J.)  On October 30, 2013, Plaintiff filed a Motion to Strike Defendants' Motion to Dismiss and/or for Summary Judgment because Defendants' Motion did not include a statement of undisputed facts, as required by D.C.COLO.LCivR 56.1(a).  (*See* Doc. No. 104.)  On December 6, 2013, the court granted Plaintiff's Motion to Strike in part and directed Defendants to file, as supplement to their Motion to Dismiss and/or for Summary Judgment, the required statement of undisputed facts.  (Minute Order, Doc. No. 113.)  The court further directed Plaintiff to file his response to Defendants' Motion to Dismiss and/or for Summary Judgment no later than January 8, 2014.  (*Id.*)

Defendants' Supplement was filed on December 18, 2013.  (Doc. No. 115 [Suppl.].) Plaintiff's Response was filed on December 27, 2013.  (Doc. No. 116 [Resp.].)  Defendants' Reply was filed on January 22, 2014.  (Doc. No. 120 [Reply].)

Plaintiff's First Motion for Partial Summary Judgment was filed on October 24, 2013.  (*See* First Mot. Summ. J.)  On November 14, 2013, Defendants moved to stay the filing of dispositive motions and briefing on Plaintiff's First Motion for Summary Judgment based on their assertion of qualified immunity in their Motion to Dismiss and/or for Summary Judgment.  (Doc. No. 106.)

Plaintiff did not respond to Defendants' Motion to Stay.  Accordingly, on January 3, 2014, the

court granted the Motion to Stay and stayed briefing on Plaintiff's Motion to Dismiss.  (Order,

Doc. No. 117.)

Plaintiff's Second Motion for Summary Judgment was filed on March 6, 2014.  (*See*

Second Mot. Summ. J.)  The court stayed briefing on this motion on March 7, 2014, based on the

order granting Defendants' Motion to Stay.  (Minute Order, Doc. No. 131.)

## LEGAL STANDARD

### A.    Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim upon

which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations

omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that

a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors*

*of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723

(1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not

"supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort*

*Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories

12

for the plaintiff in the absence of any discussion of those issues").

**B.      *Lack of Subject Matter Jurisdiction***

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party

13

challenges the facts upon which subject matter jurisdiction depends, a district court may not

presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to

allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve

disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

**C.      *Failure to State a Claim upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a

claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties

might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to

state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201

(10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff." *Hall v.

Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means

that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of

analysis. First, the court identifies "the allegations in the complaint that are not entitled to the

assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or

14

merely conclusory. *Id*. at 1949–51. Second, the Court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*,129 S. Ct. at 1949 (citation omitted).

In making the required determination, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also Utah Gospel Mission v. Salt Lake City Corp*., 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is

15

not in dispute."); *Kennedy v. Peele*, 552 F. App'x 787, Case No. 11-cv-00967-REB-KMT, 2014 WL 92251, *4 (10th Cir. January 10, 2014).  "[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true."  *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997).

**D.     *Qualified Immunity***

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss.  *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988).  Once the defense is asserted, the burden shifts to the plaintiff to establish (1) that the defendant's actions violated a federal constitutional or statutory right and (2) that the federal right was clearly established at the time of the challenged conduct.  *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010); *see also Losavio*, 847 F.2d at 646.  While the plaintiff bears this burden, at the motion to dismiss stage, well-pleaded factual allegations are taken as true, although the court must consider whether they plausibly give rise to a claim for relief.  *Weise v. Casper*, 593 F.3d 1163,1166 (10th Cir. 2010).

16

The plaintiff first must establish that his allegations, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id*. This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id*. "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. If the plaintiff fails to satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in *Saucier*, holding that the sequence of the analysis is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223 (2009). The judges of the district courts and the courts of appeals are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id*. at 236. The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence. *Id*.

**E.      *Summary Judgment***

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving

party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517.  Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).  "When opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

Finally, because Plaintiff submitted his Response under penalty of perjury (*see* Resp. at 17), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). *See also Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) ("Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)."). "Rule 56(e) requires that the affidavit be based on personal knowledge, contain facts which would be admissible at trial, and show that the affiant is competent to testify on the matters stated therein." *Conaway*, 853 F.2d at 792.

## ANALYSIS

### I.     MOTION TO DISMISS

#### A.     Eleventh Amendment Immunity

Defendants argue that to the extent Plaintiff is seeking money damages against Defendants in their official capacities, such claims are barred by the Eleventh Amendment.  (Mot. Dismiss/Summ. J. at 2-3.)  The court agrees.

The Eleventh Amendment to the United States Constitution states:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  It has been interpreted to bar a suit by a citizen

against the citizen's own state in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  Suits against state officials in their official capacity should be treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007).  Moreover, a § 1983 action may only be brought against a person.  *See* 42 U.S.C. § 1983.  Neither states nor state officers sued in their official capacity for monetary damages are persons within the meaning of § 1983.  *Will*, 491 U.S. at 70-71.

In his Response Plaintiff concedes this argument, "in that, [he is] not seeking monetary damages from Defts in their official capacities."  (Resp. at 1.)  Nevertheless, for sake of clarity, the court finds that, to the extent Plaintiff's Amended Complaint seeks monetary damages from Defendants in their official capacities, such claims are barred by the Eleventh Amendment.

### B.    *Injunctive Relief against Defendant Boyd*

Plaintiff seeks, *inter alia*,[2] an injunction ordering treatment for his Hepatitis C and pain. (Am. Compl. ¶ 70.)  Defendants argue that this request for injunctive relief is moot as to Defendant Boyd because he was transferred from CSP to SCF.  (Mot. Dismiss/Summ. J. at 3.)  Plaintiff

---

[2] Plaintiff's remaining requests for injunctive relief bear no relationship to his claims against Defendant Boyd.  (*See* Am. Compl. ¶¶ 67-70) 16 (seeking (1) an injunction ordering that Plaintiff be moved back to a prison no further from Grand Junction, Colorado than Canon City, Colorado, (2) an injunction reversing and expunging the administrative segregation hearings and ordering Plaintiff's return to general population, and (3) an injunction that all records of Plaintiff's purported assault on staff member be expunged).)

argues that while his request for injunctive relief against Defendant Boyd appears facially moot due to his transfer, it nevertheless qualifies for an exception to the mootness doctrine.  (Resp. at 16.)

At the outset, the court notes that before Plaintiff filed his Response, he had been transferred back to CSP from SCF.  (*See id.; see also* Not. of Address Change, Doc. No. 114, filed Dec. 13, 2014.)  Nevertheless, Defendants' argument that Plaintiff's request for injunctive relief against Defendant Boyd is moot is still salient, as Plaintiff has since been transferred from SCF to Limon Correctional Facility.  (*See* Not. of Address Change, Doc. No. 135, filed May 12, 2014.)

"When a prisoner files suit against prison officials who work in the institution in which he is incarcerated, seeking . . . injunctive relief on the basis of alleged wrongful conduct by those officials, and then that prisoner is subsequently transferred to another prison or released from the prison system," courts routinely dismiss such penitentiary-specific claims as moot.  *Jordan v. Sosa,* 654 F.3d 1012, 1298 (10th Cir. 2011).  Because a prisoner's transfer "signal[s] the end of the alleged deprivation of his constitutional rights, an entry of equitable relief in his favor would amount to nothing more than a declaration that he was wronged, and would have no effect on  the defendants' behavior toward him."  *Id.* (internal quotation marks and citations omitted).

There are several exceptions to the mootness doctrine.  In contending that his request for injunctive relief against Defendant Boyd falls under an exception to the mootness doctrine, Plaintiff cites to *Ind v. Colorado Dep't of Corrs.,* No. 09-cv-00537-WJM-KLM, 2012 WL 4033826 (D. Colo. Sept. 13, 2012).  (Resp. at 16.)

*Ind* addresses the voluntary cessation exception to the mootness doctrine.  The voluntary

cessation exception exists "to counteract the possibility of a defendant ceasing illegal action long

enough to render a lawsuit moot and then resuming the illegal conduct."  *Jordan,* 654 F.3d at 1037

(quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1115 (10th Cir.

2010)).  However, the voluntary cessation exception is implicated only where the Defendant's

cessation of illegal conduct was "truly voluntary."  *Eagle Air Med Corp v. Martin,* 377 F. App'x

823, 829 (10th Cir. 2010) (citing *Chihuahuan Grasslands Alliance,* 545 F.3d 884, 893 (10th Cir.

2008).

Here, there is nothing to indicate that Defendant Boyd voluntarily ceased her allegedly

unlawful actions "in an effort to evade judicial review or avoid judgment by temporarily altering"

her behavior.  *Chihuahuan Grasslands Alliance,* 545 F.3d at 893.  The record is devoid of facts

indicating that Plaintiff's transfer to SCF was related in any way to Plaintiff's allegations of

delayed and inadequate treatment of his Hepatitis C.  Indeed, any argument that Plaintiff was

transferred to temporarily cease Defendant Boyd's allegedly unlawful conduct is further undercut

by the fact that Plaintiff was transferred *back* to CSP while his request for injunctive relief against

Defendant Boyd was still pending.  As such, because Plaintiff's transfer to SCF was likely initiated

based on reasons wholly unrelated to Plaintiff's allegations against Defendant Boyd, the voluntary

cessation doctrine does not apply in this case.  *See id.*; *Eagle Air Med Corp.,* 377 F. App'x at 829.

Liberally construing Plaintiff's Response, the court finds that Plaintiff may also be arguing

that his request for injunctive relief against Defendant Boyd is not moot under the "capable of

repetition, yet evading review" exception.  (*See* Resp. at 16.)  To satisfy this "narrow exception,"

Plaintiff must show: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Jordan,* 654 F.3d at 1035. Plaintiff bears the burden of establishing both elements of this test. *Id.*

Because Plaintiff has not addressed the first factor whatsoever, the court would be warranted in finding that the capable-of-repetition exception has not been satisfied. However, even if Plaintiff could satisfy the first factor, the court finds there is not a reasonable expectation that Plaintiff will be subject to the same action again. As discussed, Plaintiff has since been transferred from CSP to Limon Correctional Facility. As such, it is speculative at best that Plaintiff will be returned to CSP. Moreover, even if it could find a reasonable likelihood that Plaintiff will return to CSP, the court is not convinced that there is a reasonable likelihood that Plaintiff will be subject to the same action from Defendant Boyd. Plaintiff alleges, in essence, that Defendant Boyd unreasonably delayed his treatment for Hepatitis C. However, Plaintiff admits that he is now receiving treatment for his Hepatitis C—although he continues to challenge the adequacy of that treatment. (Compl. ¶ 35.) The court finds it is speculative, at best, that if he returned to CSP, Defendant Boyd would deliberately delay or thwart this established course of treatment.

Accordingly, the fact that Plaintiff is no longer housed at CSP renders Plaintiff's request for injunctive relief against Defendant Boyd moot and the relevant exceptions to the mootness doctrine are not satisfied. Therefore, Plaintiff's request for injunctive relief against Defendant Boyd is properly dismissed for lack of subject matter jurisdiction.

23

### C.       Claim One

Defendants argue that Plaintiff's first claim for relief should be dismissed three reasons:

(1) the *Younger* doctrine requires this court to abstain from considering Plaintiff's due process

claim against Defendants Ahlin and DePriest; (2) Defendant Zavislan is entitled to qualified

immunity; and (3) Plaintiff fails to state a claim for relief against Defendants Dash, Estrada, and

Olson and/or these defendants are entitled to qualified immunity.  The court addresses these

arguments in turn.

#### 1.       Defendants Ahlin and DePriest - Younger Doctrine

Under *Younger v. Harris,* 401 U.S. 37 (1971), federal courts are to avoid interfering with

ongoing state proceedings if the state court provides an adequate forum to present any federal

constitutional challenges.  *Younger* abstention is a jurisdictional question.  *Steel Co. v. Citizens for

a Better Env.,* 523 U.S. 83, 100 n.3 (1998).  *Younger* abstention "extends to federal claims for

monetary relief when a judgment for the plaintiff would have preclusive effects on a pending

state-court proceeding," as well as to requests for declaratory and injunctive relief.  *Buck v.*

*Meyers,* 244 F. App'x 193, 197-98 (10th Cir. 2007).

The *Younger* doctrine requires a federal court to abstain from exercising jurisdiction when:

(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court

provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state

proceedings "involve important state interests, matters which traditionally look to state law for

their resolution or implicate separately articulated state policies."  *Weitzel v. Div. of Occupational*

*and Prof'l Licensing*, 240 F.3d 871, 875 (10th Cir. 2001) (internal citations omitted).  If these

24

conditions are met, abstention is nondiscretionary and must be invoked, absent extraordinary circumstances. *Id.* The Younger doctrine applies regardless of whether the plaintiff is seeking injunctive, declaratory, or monetary relief. *D.L. v. Unified School Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004).

The court finds that the *Younger* factors are satisfied here. The first prong of the *Younger* doctrine, determining whether there is an ongoing proceeding, actually "involves two sub-parts." *Brown ex rel. Brown v. Day,* 555 F.3d 882, 888 (10th Cir. 2009. First, a court must determine whether there is an ongoing proceeding, and second, whether the ongoing proceeding is the type of proceeding that requires abstention under *Younger. Id.* For purposes of *Younger* abstention, there are two types of ongoing proceedings: remedial and coercive. *Id.* at 889. *Younger* abstention applies only if the ongoing proceeding is coercive; it does not apply to remedial proceedings. *Id.* at 888-89.

Plaintiff does not contest that there is an ongoing state court proceeding regarding his administrative segregation hearing. [3] Plaintiff initially filed a Complaint pursuant to Colo. R. Civ. P. 106.5 in Denver District Court seeking review of the initial classification hearing conducted on February 8, 2011. (*See* Mot., Ex. A-2 at 7.) The defendants in the Rule 106.5 action conceded that

---

[3] Plaintiff argues that there is not an ongoing state court proceeding with respect his initial classification hearing held in February 2011 because the current state court proceeding only relates to issues arising in the second remanded hearing. (Resp. at 8-9.) However, as discussed *infra,* the procedural adequacy of the first classification hearing was considered in the same state court proceeding that is now considering the procedural adequacy of the second classification hearing. (*See* Mot. Ex. A-2.) Moreover, any alleged due process violations that occurred in Plaintiff's first hearing were mooted by his successful appeal and rehearing. *Saleh v. Davis,* No. 09-cv-02607-PAB-KLM, 2011 WL 334321, at *1 n.2 (D. Colo. Jan. 31, 2011) (citing *Brown v. Wyo. Dep't of Corrs.,* 234 F. App'x 874, 878 n.1 (10th Cir. 2007)).

there were procedural errors that justified a new hearing, and requested that the matter be remanded back to the CDOC for a new classification hearing. (*Id.* at 4; *see also* Am. Compl. ¶ 4.) After the second classification hearing was complete, Plaintiff challenged the adequacy of the due process afforded to him in that hearing. (Mot., Ex. A-3.) The Denver District Court affirmed and Plaintiff appealed to the Colorado Court of Appeals. (Mot. Ex A-4.) Thus, at the time of Defendants' Motion, there was an ongoing state proceeding regarding the sufficiency of procedures afforded to Plaintiff at his administrative segregation hearing.

Further, the court finds that a judgment for Plaintiff on his due process claims against Defendant Ahlin and DePriest would have a preclusive effect over the state court action. Indeed, Plaintiff seeks an "injunction reversing and expunging the ad seg hrgs and ordering [his] return to general prison population." (Am. Compl. ¶ 68.) If this court were grant this relief, based on a finding that Plaintiff's due process rights were violated during the second classification hearing, it would plainly have a preclusive effect over the state court proceedings.

Plaintiff argues that the state court proceeding is remedial rather than coercive. (Resp. at 10-11.) To determine whether an ongoing proceeding is remedial or coercive, the court must conduct three inquiries. First, the court must consider "whether the federal plaintiff initiated the state proceeding of her own volition to right a wrong inflicted by the state (a remedial proceeding) or whether the state initiated the proceeding against [him], making [his] participation mandatory (a coercive proceeding)." *Brown,* 555 F.3d at 889. Second, the court "must differentiate cases where the federal plaintiff contends that the state proceeding is unlawful (coercive) from cases where the federal plaintiff seeks a remedy for some other state-inflicted wrong (remedial)." *Id.* Finally, "if

the federal plaintiff has committed an alleged bad act, then the state proceeding initiated to punish the plaintiff is coercive." *Id.* at 891.

Applying this test, the court finds that the state proceedings here are coercive.  As to the first factor, although Plaintiff initiated the Rule 106.5 action in state court, he did so to appeal an underlying administrative segregation hearing that was brought against him and in which his participation was mandatory.[4]  Second, Plaintiff plainly contends that the administrative proceedings were unlawful; he asserts that the decision to place him in administrative segregation violated his due process rights.  Finally, the classification hearings were commenced to determine whether Plaintiff should be placed in administrative segregation based on his escape charge.

The second factor of the *Younger* test is also met as the state court proceedings provide an adequate forum for Plaintiff to raise his constitutional claims.  Although the state court explicitly stated that it lacked jurisdiction to consider Plaintiff's due process claims regarding the *conditions* of Plaintiff's confinement in administrative segregation (Reply, Ex A-7 at 3-4), it had jurisdiction to consider, and did consider, whether the decision to place Plaintiff in administrative segregation complied with due process (*id.*).  Defendants do not argue, and the court does not find, that abstention is appropriate on Plaintiff's due process claims regarding the conditions of his confinement in administrative segregation.  Instead, the court finds that *Younger* abstention is appropriate only on Plaintiff's due process claims against Defendants Ahlin and DePriest regarding the decision to place him in administrative segregation.  *See also Dawkins v. Keith,* No. 07-cv-00741-WDM-KMT, 2008 WL 4001320, at *2 (D. Colo. Aug. 27, 2008) (finding that state

---

[4] Although Plaintiff contends that the first classification hearing was initiated only after he requested it, that does not alter the fact that the hearing was brought against him.

proceeding under Colo. R. Civ. P. 106 provided an adequate forum for claims that administrative

segregation hearing violated the plaintiff's due process rights).

The final *Younger* element is also satisfied.  The Rule 106.5 state court action involves

important state interests, "in that the primary issue there [is] whether the prison officials adhered

[to] state regulations concerning administrative segregation classification decisions."  *Id.* at *3.

Therefore, because each element of the *Younger* test is met, so long as the state court

proceeding is pending, the court finds that it must abstain from hearing Plaintiff's due process

claims regarding the decision to place him in administrative segregation.

Plaintiff contends that even if abstention is warranted, the court should stay this action

rather than dismiss his claims for lack of jurisdiction.  (Resp. at 12.)  The court disagrees as to

Plaintiff's claims for injunctive and declaratory relief, but agrees as to Plaintiff's claims for

damages.  Where *Younger* abstention is required, claims for injunctive relief must be dismissed

without prejudice.  *Phelps v. Hamilton,* 122 F.3d 885, 889 (10th Cir. 1997) (citing *Younger,* 401

U.S. at 43).  Therefore, Plaintiff's request for an injunction reversing and expunging the ad se hrgs

and ordering [his] return to general prison population" (Am. Compl.) is properly dismissed

without prejudice.

However, the court has no authority to dismiss Plaintiff's claims for damages.  *Buck v.

Myers,* 244 F. App'x 193, 198 (10th Cir. 2007) (citing *D.L. v. Unified Sch. Dist.* No. 497, 392 F.3d

1223, 1228 (10th Cir. 2004)); *Deakins v. Monaghan,* 484 U.S. 193, 202 (1988) (a district court

finding that *Younger* abstention is required nevertheless "has no discretion to dismiss rather than to

stay claims for monetary relief that cannot be redressed in the state proceeding.").  Instead, it must

stay Plaintiff's due process claims against Defendants Ahlin and DePriest pending resolution of the state court case.[5]

Altogether, the court finds that abstention under the *Younger* doctrine is warranted as to Plaintiff's due process claims against Defendants Ahlin and DePriest.  As such, the court finds that Plaintiff's first claim against Defendants Ahlin and DePriest is properly dismissed to the extent Plaintiff seeks injunctive and declaratory relief and properly stayed to the extent Plaintiff seeks money damages.

### 2.      *Defendant Zavislan*

In his first claim, Plaintiff alleges that Defendant Zavislan violated his Fourteenth Amendment due process rights because he was initially placed in administrative segregation on December 27, 2010, but Defendant Zavislan did not serve him with notice of the charges against him until February 4, 2011 and did not provide him with a classification hearing until February 8, 2011.  (Am. Compl. ¶ 3.)  Defendants argue that Defendant Zavislan is entitled to qualified immunity from Plaintiff's first claim for relief because there is no clearly-established law demonstrating that Defendant Zavislan's actions were unconstitutional.  (Mot. Dismiss/Summ. J. at 4-5.)

To state a procedural due process claim, Plaintiff must demonstrate (1) that he had a

---

[5] The court notes that if the state court proceedings have been finalized, then Plaintiff's claims may be barred by the *Rooker-Feldman* doctrine, *Rooker v. Fid. Trust, Co.,* 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462(1983); *see also Johnson v. DeGrandy,* 512 U.S. 997, 1005-06 (1994) (*Rooker-Feldman* doctrine bars "a party losing in state court . . . from seeking what in substance would be appellate review of the state court judgment in a United States district court"), unless the state court case was terminated in his favor, *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994).

protected liberty or property interest that was interfered with by the government, and (2) that the procedures attendant upon that deprivation were constitutionally deficient. *Ky. Dep't of Corrs. v. Thompson,* 490 U.S. 454, 460 (1989) (citations omitted). Defendants do not argue that Plaintiff has failed to adequately alleged a liberty interest in avoiding an extended placement in administrative segregation. Instead, Defendants argue that there is no clearly-established law demonstrating that providing Plaintiff with a hearing 44 days after he was initially confined in administrative segregation was unconstitutional. (Mot. Dismiss/Summ. J. at 4-5.)

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Estate v. Booker v. Gomez,* 745 F.3d 405, 411 (10th Cir. 2014) (internal quotation marks and citations omitted). It is not necessary for a case to be "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Martin,* 425 F. App'x 736, 743-44 (10th Cir. 2011) (quoting *Ashcroft v. al-Kidd,* --- U.S. ----, 131 S.Ct 2074 (2011)).

Assuming Plaintiff had a liberty interest in avoiding administrative segregation, then *Hewitt v. Helms,* 459 U.S. 460, 476 (1983) *overruled on other grounds by Sandin v. Conner,* 515 U.S. 472(1995), specifies the minimum procedures for placing him in such confinement. Those procedures include some "notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* Although a hearing need not occur prior to confinement in administrative segregation, it "must occur within a reasonable time following an inmate's transfer." *Id.*

Nevertheless, outside of holding that conducting a hearing five days after the initial transfer to administrative segregation "plainly satisfied the Due Process requirements," *id* at 877, *Hewitt* does not define what constitutes a reasonable time. In addition, Plaintiff has not cited, nor can the court otherwise locate, a Tenth Circuit decision defining the boundaries of a reasonable time.

Accordingly, the court must determine whether the clearly established weight of authority from other courts establishes that a 44-day delay between an inmate's initial placement in administrative segregation and a classification hearing is unreasonable. The court's review of those cases fails to persuade the court that it is "beyond debate" that a 44 day delay is unreasonable. *White,* 425 F. App'x at 743-44.

As might be expected, courts have held that extreme delays before conducting a classification hearing are plainly unreasonable. *Hornes v. Coughlin,* 155 F.3d 26 (2d Cir. 1998) (148-day confinement in administrative segregation prior to hearing "quite plainly exceeds all boundaries of reasonableness"); *Wright v. Smith,* 21 F.3d 496 (2d Cir. 1994) (defendants who delayed a hearing for 67 days were not entitled to qualified immunity); *Hatch v. Dist. of Columbia,* 184 F.3d 846, 852 (D.C. Cir. 1999) (waiting over seven weeks after initial placement in administrative segregation to even consider letters submitted by the plaintiff was "hardly a reasonable time following his transfer.") (quotation marks and citation omitted). However, several Second Circuit cases have held that even a relatively short delay may violate due process. *Russell v. Coughlin,* 910 F.2d 75 (2d Cir. 1990) (10-day delay prior to review violated due process where the defendants offered no evidence to support the delay and, in fact, admitted it was due to their

31

inadvertence); *Santana v. Keane,* 949 F.2d 584, 585 (2d Cir. 1991) (five-day delay in hearing stated claim for due process violations where the record did not shed any light on the reasons for the delay).

In between those extremes, in what might be the best analog to this case, the Third Circuit held that, under "the specific circumstances" of the case, a "35-day wait did not rise to the level of a due process violation." *Sourbeer v. Robinson,* 791 F.2d 1094, 1099-1100 (3d Cir. 1986) (delay was not unreasonable because the juvenile plaintiff had recently been transferred from county jail after his conviction for murder and therefore prison officials needed to investigate whether he posed a security risk). The fact that a 35-day delay was reasonable certainly casts some doubt as to whether the 44-day delay in this case was obviously unreasonable.

Moreover, the Circuits do not appear to agree on how to determine what constitutes a reasonable time. The Third Circuit, on one hand, has held that "[t]he determination of whether a hearing was afforded to [an inmate] within a reasonable time cannot be established by any clear-cut or bright-line rule, or by any fixed or precise time period that would be generally applicable." *Layton v. Beyer,* 953 F.2d 839, 850 (3d Cir. 1992). Instead, according to *Layton,* "the answer lies only by a careful review and consideration of the totality of the then existing circumstances." *Id.* However, in contrast to the Third Circuit, the Eighth Circuit has considered the specific duration of the delay, without regard to the underlying circumstances. *Swenson v. Trickey,* 995 F.2d 132, 135 (8th Cir. 1993) (in determining whether the defendants were entitled to qualified immunity, "the question is whether it was clearly established in 1986 that a constitutionally reasonable time is less than fifteen days").

Ultimately, in the absence of some guidance from either the Supreme Court or the Tenth Circuit as to what constitutes a reasonable time for holding a classification hearing after an inmate's initial placement in segregation, the court cannot conclude that it is "beyond debate" that the 44-day delay between Plaintiff's initial placement in administrative segregation and his first classification hearing was unconstitutional.  As such, the court finds that Defendant Zavislan is entitled to qualified immunity on Plaintiff's first claim for relief.

### 3.      *Defendants Dash, Estrada, and Olson*

Plaintiff's first claim also alleges that Defendants Dash, Estrada and Olson failed to provide meaningful reviews of his confinement in administrative segregation.  (Am. Compl. ¶ 9.) Defendants argue Plaintiff fails to state a claim for relief and that Defendants Dash, Estrada, and Olson are entitled to qualified immunity.  (Mot. Dismiss/Summ. J. at 9-11.)

In *Hewitt,* the Supreme Court stated, "administrative segregation may not be used as a pretext for indefinite confinement of an inmate.  Prison officials must engage in some sort of periodic review of the confinement of such inmates." *Id.* at 477 n.9.  Although "[t]he review need not be extensive, . . . [it] must be meaningful; it cannot be a sham or a pretext." *Toev v. Reid,* 685 F.3d 903, 912 (10th Cir. 2012).

In *Toevs,* after a panel re-hearing of an earlier decision, 646 F.3d 752 (10th Cir. 2011), the Tenth Circuit considered whether the same program at issue here—the QLLP—provided meaningful periodic reviews.  Mr. Toevs was placed in administrative segregation after attempting to escape. *Id.* at 908.  Mr. Toevs complained that he was denied due process because the periodic reviews he received "were perfunctory, meaningless, and all said the same thing." *Id.*

The Tenth Circuit noted that, unlike punitive segregation, "administrative segregation is not punitive and it looks to the present and future rather than to the past." *Id.* at 913. Thus, in the context of a behavior-modification program like the QLLP, a "meaningful" review "evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to segregation, determines, without preconception, whether that placement remains warranted." *Id.* A meaningful review "would consider whether the prisoner is eligible to move to the next level or, if the prisoner is at the highest level, if he or she is eligible to graduate from the program." *Id.* It should "provide a statement of reasons, which will often serve as a guide for future behavior (i.e. by giving the prisoner some idea of how he might progress toward a more favorable placement)," because the goal of placement in a stratified incentive program "is solely and exclusively to encourage a prisoner to improve his future behavior." *Id.*

The Tenth Circuit panel held that Mr. Toevs had not received meaningful periodic reviews of his placement in administrative segregation. *Id.* at 914-915. For example, he was not given meaningful information as to why he was being held at a certain level. *Id.* Specific classes were recommended, but there was no indication whether they had to be completed in order to progress to a higher level. *Id.*

In light of *Toevs,* the court finds that Plaintiff has stated a claim against Defendants Dash, Olson, and Estrada for violation of his due process rights. Plaintiff's factual allegations regarding the periodic reviews he received, while admittedly scant, are not conclusory. (*See* Am. Compl. ¶ 9.) As such, the court must accept Plaintiff's allegation that the reviews prepared by Defendants Dash, Olson, and Estrada "did not specify the reasons why [Plaintiff] was being recommended for

or denied progression through the . . . [QLLP]." (*Id.*)  Based on the holding in *Toevs*—as well as the fact that Defendants have not challenged that Plaintiff had a liberty interest in avoiding administrative segregation—this is sufficient to state a procedural due process claim.[6]

Nevertheless, the court finds that Defendants are entitled to qualified immunity with respect to any pre-*Toevs* periodic reviews.  In *Toevs,* the Tenth Circuit found that although *Hewitt* established that meaningful periodic reviews were required for indefinite administrative segregation classifications, it (the Tenth Circuit) had not "previously interpreted 'meaningful' to require officials to inform prisoners of the reasons for their continued placement" in administrative segregation.  *Id.*  Thus, this requirement was not clearly established until at least April 2, 2012,[7] the date that *Toevs* was decided, that a meaningful review requires that an inmate be informed of the reasons for the denial of or approval of their progression through a stratified incentive program like the QLLP.

Plaintiff asserts that he was first placed in the administrative segregation in the CDOC on

---

[6] Defendants place emphasis on Plaintiff's allegation that the periodic reviews did not specify the reasons why [he] was being *recommended for* . . . progression" through the QLLP program.  (Mot. Dismiss/Summ. J. at 9-10) (emphasis added).  Defendants argue that Plaintiff's allegations fail to establish that Defendants Dash, Olson, and Estrada ever actually denied him progression through the QLLP.  However, *Toevs* does not distinguish between periodic reviews that recommend progression and those that recommend that progression be denied.

[7] Plaintiff appears to argues that the law regarding a meaningful review was clearly established on June 20, 2011, at the time of the first *Toevs* opinion, 646 F.3d 752.  (Resp. at 8 (quoting *Anderson v. Colorado,* 887 F. Supp. 2d 1133, 1153 (D. Colo. 2012) ("The first post-Toevs ASR, issued to Mr. Anderson on July 11, 2011 . . . .")  The court is not convinced.  The second *Toevs* opinion,685 F.3d 903, which was issued after the panel granted the CDOC defendants' Petition for Panel Rehearing or Rehearing *En Banc,* amended and *superseded* the first *Toevs* opinion, 646 F.3d 752.  For all the CDOC knew, the panel could have overruled its prior decision in its entirety.  As such, the court finds that the law regarding meaningful review was not clearly-established until the latter *Toevs* decision.  Notably, *Anderson* did not consider whether the defendants in that case were entitled to qualified immunity.  *See generally* 887 F. Supp. 2d 1153.

December 27, 2010 (Am. Compl. ¶ 8), and that classification continued through April 2013, when

he prepared his Amended Complaint (*see id.* ¶ 68.)  Based on the lack of clarity in the law prior to

*Toevs,* Defendants Dash, Olson, and Estrada are entitled to qualified immunity from liability for

any allegedly deficient periodic reviews between December 27, 2010 and April 2, 2012.  However,

Defendants are not entitled to qualified immunity, at least at this juncture, for periodic reviews that

were conducted after April 2, 2012.

> **D.      *Exhaustion of Administrative Remedies as to Eighth Amendment Allegations of Claim One and Claims Two, Three, and Four***

Defendants argue that they are entitled to summary judgment on the Eighth Amendment

portion of Plaintiff's first claim, as well as Plaintiff's second, third, and fourth claims, because

Plaintiff failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act

(PLRA), 42 U.S.C. § 1997e(a).  (Mot. Dismiss/Summ. J. at 11-13.)

The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. 1997e(a).  The exhaustion requirement applies to "all prisoners seeking redress for

prison circumstances or occurrences."  *Porter v. Nussle,* 534 U.S. 516, 520 (2002); *see also id.* at

532 (the "PLRA's exhaustion requirement applies to all inmate suits about prison life.").

The PLRA's requirement that an inmate exhaust all available administrative remedies

before initiating suit is mandatory.  *Woodford v. Ngo,* 548 U.S. 81, 84 (2006) ("Exhaustion is no

longer left to the discretion of the district court, but is mandatory.").  "To exhaust administrative

remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Penitentiary,* 511 F.3d 1109, 1112 (10th Cir. 2007). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock,* 549 U.S. 199, (2007) (internal quotation marks and citation omitted). Thus, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The CDOC provides inmates with administrative remedies in the form of a grievance process set forth in CDOC Administrative Regulation (AR) 850–04. (Mot. Dismiss/Summ. J. , Ex. A-5, Affidavit of Anthony DeCesaro, ¶ 5 [DeCesaro Aff.].) *See also* AR 850-04, available at http://www.doc.state.co.us/administrative-regulations (last visited Aug. 23, 2014). Under AR 850–04, inmates must grieve any alleged injuries or unlawful conduct by pursuing a three-step process. First, the inmate must attempt to resolve the issue or complaint by filing a Step One grievance within 30 days of the discovery of the issue or complaint. (DeCesaro Aff. ¶ 6.) Second, if the inmate is not satisfied with the result of his Step One grievance, he must file a Step Two grievance within five days of receipt of the written response to his Step One grievance. (*Id.* ¶ 7.) And third, if the inmate is still not satisfied with the response to his Step Two grievance, he must file a Step Three grievance within five days of receipt of the written response to his Step Two grievance. (*Id.* ¶ 8.)

After *Jones,* a failure to exhaust administrative remedies constitutes an affirmative defense which must be proved by Defendants. *Roberts v. Barreras,* 484 F.3d 1236, 1241 (10th Cir. 2007).

37

Accordingly, the court considers whether Defendants have demonstrated that Plaintiff failed to exhaust his administrative remedies as to each claim.

### 1.   *Eighth Amendment Allegations of Claim One*

Defendants have submitted evidence demonstrating that, while Plaintiff filed a number of grievances, he did not file any grievances regarding the alleged lack of outdoor recreation or exercise for inmates in administrative segregation.  (DeCesaro Aff. ¶¶ 14-24, 28.)  As such, the burden shifts to Plaintiff to demonstrate a genuine issue of material fact as to whether he filed a grievance regarding the lack of outdoor exercise in administrative segregation.

Plaintiff does not contest that he failed to file a grievance regarding the lack of outdoor exercise in administrative segregation.  (*See* Resp. at 4-6.)  However, Plaintiff maintains that this issue was not grievable because "facility placement is a function of classification," and classification is not grievable.  (*Id*. at 5 (quoting *id.,* Ex. B-3.)  In support of this conclusion, Plaintiff maintains that when he told Defendant Dash that he wanted to grieve the lack of outdoor recreation, Defendant Dash stated that "(1) [Plaintiff] was placed in Ad Seg at CSP as a result of classification, (2) complaints about such matters aren't grievable and (3) referred [Plaintiff] to AR 850-4." (*Id.*)  The court disagrees with Plaintiff's contention that the issue of outdoor exercise was not grievable.

While the court agrees that an inmate cannot challenge classification decisions through the CDOC's grievance procedures, AR 850-04(IV)(D)(2)(b), Plaintiff's allegations regarding a lack of outdoor exercise do not relate to his *classification* to administrative segregation.  Instead, they relate to the *conditions* of his confinement in administrative segregation.  AR 850-04 provides that

offenders are entitled to invoke the grievance procedure "for a broad range of complaints including, but not limited to: policies and *conditions* within the facility that affect the offender personally."  AR 850-04(VI)(D)(1) (emphasis added).  Thus, the court finds that Plaintiff could have grieved the lack of outdoor exercise in administrative segregation.

It appears Plaintiff may be arguing that Defendant Dash's incorrect legal advice as to whether the outdoor exercise was grievable excuses his failure to exhaust his administrative remedies.  (*See* Resp. at 6.)  There is a recognized exception to the exhaustion requirement where an inmate has been prevented from filing a grievance.  *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002); *see also Little v. Jones,* 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust.").

However, even if incorrect legal advice was a recognized exception to timely exhaustion, Plaintiff cannot demonstrate that he detrimentally relied on Defendant Dash's advice.  *See Torres v. O'Neal,* No. 10-cv-00236-PAB-KLM, 2011 WL 782709, at *3 (D. Colo. Feb. 28, 2011) (citing *Stephens v. Guilfoyle,* 225 F. App'x 732, 736 (10th Cir. 2007)) (incorrect legal advice does not excuse a failure to exhaust where the plaintiff cannot establish he detrimentally relied on that advice).  More specifically, Plaintiff's initial Prisoner Complaint, filed September 10, 2012, did *not* include a claim for violations of his Eighth Amendment rights based on the lack of outdoor exercise in administrative segregation.  (*See* Doc. No. 1 at 5-7.)  Instead, Plaintiff waited until May 2, 2013 to assert such a claim—nearly eight months after his initial Prisoner Complaint was filed.

(*See* Doc. No. 60 & 60-1.)  As such, Plaintiff cannot contend that he rushed to the courthouse to assert his Eighth Amendment allegations based on Defendant Dash's erroneous advice. Furthermore, Plaintiff does not set forth any evidence that he has since attempted to exhaust this claim.  *Torres,* 2011 WL 782709, at *3 n.5 (citing *Hahn v. Armstrong,* 407 F. App'x 77, 79 (8th Cir. 2011)).

Accordingly, Plaintiff has failed to come forward with evidence creating a genuine dispute of material fact as to whether he exhausted administrative remedies with to the respect to his allegations that the lack of outdoor exercise in administrative segregation violated his Eighth Amendment rights.  Therefore, the court finds that summary judgment is properly granted in favor of Defendants on the Eighth Amendment aspect of Plaintiff's first claim.

### 2.  *Claim Two*

Plaintiff's second claim generally alleges that the failure to treat his Hepatitis C and related pain violated his rights under the Eighth Amendment, the ADA, and the Rehabilitation Act.  (Am. Compl. ¶¶ 17-37.)  However, this claim targets two sets of defendants at separate facilities—namely Defendant Boyd at CSP and then Defendants Christner and Beeman at SCF. (*See id.*)  The court must determine whether Plaintiff exhausted his administrative remedies with respect to his allegations against each set of defendants.

### a.  *Defendant Boyd*

Defendants rely on Mr. DeCesaro's affidavit to argue that Plaintiff did not file any Step 3 grievances with regard to his claim that Defendant Boyd deprived him of adequate medical care for his Hepatitis C while he was incarcerated at CSP.  (Mot. at 12 (citing DeCesaro Aff. ¶ 15-20.)

Accordingly, the burden shifts to Plaintiff to demonstrate a genuine issue of material fact as to whether he filed a grievance against Defendant Boyd.

The court finds that Plaintiff has established a genuine issue of material fact as to whether he exhausted administrative remedies with respect to his claims against Defendant Boyd. Contrary to Mr. DeCesaro's affidavit, Plaintiff has submitted a Step Two grievance dated June 15, 2012, and incorporated response dated June 25, 2012, regarding Defendant Boyd's failure to treat his Hepatitis C. (Resp., Ex B-1.) The response to his Step Two grievance admits that Plaintiff filed a Step One grievance regarding the same issue. (*See id.*) Finally, Plaintiff states in his Response that he filed a Step Three grievance regarding Defendant Boyd's failure to treat his Hepatitis C, but received no response. (Resp. at 4.)

The court finds that this factual dispute between Mr. DeCesaro's affidavit and Plaintiff's Response precludes entry of summary judgment on Plaintiff's claims against Defendant Boyd based on Defendants' affirmative defense of failure exhaust administrative remedies.[8] Accordingly, the court finds that Defendants' Motion to Dismiss and/or for summary judgment is properly denied to the extent it seeks to summary judgment on Plaintiff's second claim against Defendant Boyd.

### b.    *Defendants Beeman and Christner*

In Claim Two, Plaintiff alleges that, in December 2012, Defendant Christner and Beeman did not treat his Hepatitis C or attempt to alleviate his pain. (Am. Compl. ¶ 33.) Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his allegations against

---

[8] Notably, in their Reply, Defendants have abandoned their argument that Plaintiff failed to exhaust his administrative remedies with respect to his allegations against Defendant Boyd.

Defendants Christner and Beeman.  (Mot. Dismiss/Summ. J. at 12-13.)  Defendants admit that

Plaintiff filed a set of grievances concerning the adequacy of the medical care he received at SCF

for his Hepatitis C—beginning with a Step One grievance filed on September 27, 2012 and

concluding with a Step Three response on January 4, 2013.  (DeCesaro Aff. ¶ 18-19.)  However,

Defendants argue that the set of grievances beginning in September 2012 could not have exhausted

Plaintiff's administrative remedies with respect to Defendant Christner's and Beeman's conduct,

which occurred in December 2012.  (Mot. Dismiss/Summ. J. at 12-13.)

    Plaintiff counters that because that set of grievances was not completed until January 14,

2013, it encompassed Defendant Christner's and Defendant Beeman's conduct in December 2012

and therefore constituted proper exhaustion.  (Resp. at 2.)  The court agrees with Defendants.

    "A grievance obviously cannot exhaust administrative remedies for claims based on events

that have not yet occurred.  Nor does a grievance exhaust administrative remedies for all future

complaints of the same general type."  *Ross v. Cnty. of Bernalillo,* 365 F.3d 1181, 1188 (10th Cir.

2004) *overruled on other grounds by Jones,* 549 U.S. 199.  Further, AR 850-04 prohibits inmates

from raising issues in a later step that were not raised in each previous step of the grievance

process.  AR 850-04(IV)(D)(7).  As such, the set of grievances that commenced with the Step One

grievance filed in September 27, 2012 could not have exhausted Plaintiff's administrative

remedies with respect to Defendant Christner's and Defendant Beeman's conduct in December

2012.

    The court acknowledges that Plaintiff filed another set of grievances regarding the

treatment for his Hepatitis C at SCF, beginning with a Step One grievance in April 30, 2013 and

concluding with a Step Three response in July 25, 2013.  (DeCesaro Aff. ¶¶ 21-24.)  However, Plaintiff does not contend that this set of grievances was related to Defendant Christner's and Beeman's conduct.  In any event, Plaintiff was granted leave to assert claims against Defendant Christner and Beeman on June 14, 2013 (Order, Doc. No. 69) and this set of grievances was not exhausted until July 25, 2013.  As such, Plaintiff did not exhaust his administrative remedies before filing suit against Defendants Christner and Beeman.  *Jones,* 549 U.S. at 202 (The PLRA requires prisoners "to exhaust prison grievance procedures *before filing suit.*") (emphasis added).

Accordingly, because the only grievances Plaintiff filed with respect to the treatment of his Hepatitis C at SCF either (1) could not have exhausted his administrative remedies with respect to his allegations against Defendants Christner and Beeman or (2) were not exhausted before Plaintiff filed suit against Defendants Christner and Beeman, there is no genuine dispute that Plaintiff did not exhaust his administrative remedies with respect to his allegations against these defendants. As such, the court finds that summary judgment is properly granted in favor of Christner and Beeman on Plaintiff's second claim for relief.

### 3.    *Claim Three*

Plaintiff's third claim for relief alleges that Defendant Dash retaliated against him and violated his First Amendment right to petition the courts by allegedly preparing the PAS that falsely stated that Plaintiff had assaulted a staff member and cause serious injury.  (Am. Compl. ¶¶ 38-49.)  More specifically, Plaintiff alleges that the false PAS (1) was filed in his criminal case to retaliate against him for filing a motion to dismiss the escape charge, and (2) resulted in the denial of that motion to dismiss.  (*See id.*)

43

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to this claim.  (Mot. Dismiss/Summ. J. at 13.)  More specifically, Mr. DeCesaro states that he did not find any grievances filed by Plaintiff asserting that Defendant Dash retaliated against him, harassed him, or failed to notify Plaintiff of the detainer against him.  (DeCesaro Aff. ¶ 26.)

Plaintiff contends that he did file a set of grievances regarding this incident.  (Resp. at 3.) Plaintiff has attached a Step One grievance dated June 19, 2012 that alleges Defendant Dash retaliated against him by filing the false PAS.  (*Id.*, Ex. B-2.)  Further, Plaintiff states in his Response that he filed a Step Two grievance on July 16, 2012 and received no response, and then filed a Step 3 grievance on August 13, 2013 and, again, received no response.  (*Id.* at 3.)

However, even if Plaintiff did file these grievances, the court finds that Plaintiff has failed to establish a genuine issue of material fact as to whether he exhausted his administrative remedies *before* filing suit.  While an inmate's administrative remedies will be considered exhausted if he does not receive a timely response to his final grievance, *Whittington v. Ortiz,* 472 F.3d 804, 807-808 (10th Cir. 2007) here, Plaintiff did not wait for the expiration of the time period for a response to his Step Three grievance before filing suit.  More specifically, under AR 850-04, Step Three grievances shall be answered within 45 days of receipt by the grievance officer.  AR 850-04(IV)(F)(1)(c).  Here, Plaintiff contends he filed his Step Three grievance on August 13, 2012.  (Resp. at 3.)  As such, the deadline for Mr. DeCesaro's answer to this grievance was September 27, 2012.  However, Plaintiff filed his original Prisoner Complaint—which included Plaintiff's retaliation and right of access to the court claim against Defendant Dash—on September 10, 2012.  (Doc. No. 1.)  As such, even assuming Plaintiff is correct that he filed Step Two and

44

Step Three grievances regarding Defendant Dash's preparation of the false PAS, Plaintiff did not exhaust his administrative remedies *before* filing suit. *Jones,* 549 U.S. at 202.[9]

Accordingly, the court finds that there no genuine dispute that Plaintiff did not exhaust his administrative remedies prior to filing his third claim against Defendant Dash. As such, the court finds that Defendant Dash is entitled to summary judgment on Claim Three.

### 4. *Claim Four*

Plaintiff's fourth claim alleges that Defendants Dash and Sargent violated his constitutional rights by failing to arrange for confidential telephone calls with his criminal attorney. (Am. Compl. ¶¶ 50-65.) For essentially the same reasons as Claim Three, the court finds that Plaintiff failed to exhaust his administrative remedies prior to filing this claim.[10]

Mr. DeCesaro asserts that he was "unable to locate any Step 3 grievances concerning restrictions on [Plaintiff's] telephone communications with his attorney nor his ability to contact counsel." (DeCesaro Aff. ¶ 25.) Although Plaintiff contends in his Response that he did file a Step Three grievance on September 12, 2012 (Resp. at 3), his original Prisoner Complaint—which featured a § 1983 claim against Defendants Dash and Sargent for failing to provide confidential

---

[9] Plaintiff also argues that because the response to his Step One grievance regarding Defendant Dash's preparation of the false PAS stated the issue was resolved, his administrative remedies were exhausted at that juncture. However, Plaintiff's position that exhaustion is achieved through a resolved grievances is undermined not only by the grievance form itself (Resp., Ex. B-2, B-4 (stating "[i]f you are dissatisfied with the response to this grievance, you may obtain further review by submitting the next step to the appropriate individual.")), but also the fact that Plaintiff admits that he proceeded to the next step of the grievance process even though it was deemed resolved (Resp. at 3).

[10] Because the court finds that Plaintiff failed to administratively exhaust this claim, it does not address Defendants' alternative arguments that this claim is (1) barred by *Heck,* 512 U.S. 477 and (2) time-barred as to Defendant Sargent under the applicable statute of limitations.

telephone communications with his attorney—was filed two-days prior on September 10, 2012. As such, there is no genuine dispute of fact that Plaintiff did not exhaust his administrative remedies prior to filing his fourth claim for relief against Defendants Dash and Sargent. *Jones,* 549 U.S. at 202. As such, the court finds that summary judgment is properly granted to Defendants Dash and Sargent on Plaintiff's fourth claim for relief.

## II. *PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT*

In his First Motion for Summary Judgment, Plaintiff seeks summary judgment in his favor on his first claim for relief. More specifically, Plaintiff asserts that there is no genuine issue of material fact that his Eighth Amendment rights were violated by the lack of outdoor exercise in administrative segregation. (First Mot. Summ. J. at 4-7.) Plaintiff also asserts that there is no genuine issue of material fact that his due process rights were violated because (1) he had a liberty interest in avoiding an indefinite placement in administrative segregation, and (2) Defendants Zavislan; Ahlin and DePriest; and Dash, Olson, and Estrada provided him with constitutionally deficient process by failing to provide him with notice and hearing within a reasonable time; denying him an ability to call witnesses on his behalf; and failing to provide him with meaningful periodic reviews, respectively. (*Id.* at 7-11.)

In his Second Motion for Partial Summary Judgment, Plaintiff seeks summary judgment in his favor on his second claim for relief. More specifically, Plaintiff asserts that the undisputed facts demonstrate that Defendant Boyd was deliberately indifferent to his need for medical care for his Hepatitis C and related pain. (*See generally* Second Mot. Summ. J.)

The court recommends that Plaintiff's Motions for Summary Judgment be denied without prejudice, with leave to refile after the District Court's ruling on this Recommendation. First, Plaintiff's Motions for Summary Judgment technically violate District Judge Robert E. Blackburn's Civil Practice Standards. More specifically, Judge Blackburn's Practice Standards provide that "if a party elects to file more than one Rule 56 motion [for summary judgment], then the motions . . . shall not exceed **twenty (20) pages** total for all such motions (not each such motion) filed by that party." REB Civ Practice Standard IV.B.2 (emphasis in original). "These page limitations shall include the motion, cover page, jurisdictional statement, statement of facts, procedural history, argument, closing, signature block, and all other matters, excluding the certificate of service." *Id.* Here, Plaintiff's Motions for Summary Judgment are 21 pages combined. (*See* First Mot. Summ. J.; Second Mot. Summ. J.)

More importantly, if the District Court adopts this Recommendation a significant portion of Plaintiff's Motions for Summary Judgment will be rendered moot. Specifically, if the District Court agrees that (1) Plaintiff failed to exhaust his administrative remedies with respect to his claim that the lack of outdoor exercise in administrative segregation violated the Eighth Amendment; (2) Plaintiff's due process claims against Defendant Ahlin and DePriest are barred by the *Younger* doctrine; (3) Defendant Zavislan is entitled to qualified immunity from Plaintiff's due process claim; and (4) Defendants Dash, Olson, and Estrada are entitled to qualified immunity for any periodic reviews that occurred prior to April 2, 2012, then a substantial portion of Plaintiff's First Motion for Summary Judgment will be moot. Under these circumstances, the court believes that Plaintiff is better served by refiling a motion for summary judgment that not only complies

47

with Judge Blackburn's Practice Standards, but also narrowly focuses on the claims remaining after the District Court's ruling on this Recommendation.

Plaintiff will suffer little, if any, prejudice if his Motions for Summary Judgment are denied with leave to refile. The court stayed briefing on Plaintiff's Motions for Summary Judgment, based on Defendants' assertion of qualified immunity in the Motion to Dismiss and/or for Summary Judgment. (Order, Doc. No. 117.) Ultimately, the benefit of requiring Plaintiff to refile a motion for summary judgment that complies with Judge Blackburn's Practice Standards and eliminates any extraneous facts and arguments outweighs the burden Plaintiff will face by preparing a new motion for summary judgment.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMEND that Defendants' "Motion to Dismiss Amended Complaint (Doc. 93) Pursuant to Fed R. Civ. P. 12(b)(1) and (6) and/or for Summary Judgment" (Doc. No. 100) be GRANTED in part and DENIED in part as follows:

a.    The court RECOMMENDS that Plaintiff's claims for damages against Defendants in their official capacities be dismissed without prejudice.

b.    Claim One: The court RECOMMENDS THAT claim one be

1.    DISMISSED without prejudice with respect to Plaintiff's request for declaratory and injunctive relief;

2.    STAYED with respect to Plaintiff's claims for damages against Defendants Ahlin and DePriest;

3.    DISMISSED with respect to Plaintiff's claim against Defendant Zavislan;

4.    DISMISSED in part and SUSTAINED in part with respect to Plaintiff's claim against Defendants Dash, Olson, and Estrada; and

       5.     DISMISSED without prejudice as to Plaintiff's claim that the lack of outdoor exercise in administrative segregation violated the Eighth Amendment.

   c.    Claim Two: The court RECOMMENDS that Claim Two be

       1.     DISMISSED without prejudice as to Defendants Christner and Beeman;

       2.     DISMISSED without prejudice as to Plaintiff's request for an injunction against Defendant Boyd;

       3.     SUSTAINED as to Plaintiff's claim for money damages against Defendant Boyd.

   d.    Claims Three and Four:  The court RECOMMENDS that Claims Three and Four be DISMISSED without prejudice.

The court further respectfully

RECOMMENDS that Plaintiff's "Motion for Partial Summary Judgment" (Doc. No. 102), and "Second Motion for Partial Summary Judgment Pursuant to Rule 56" (Doc. No. 129) be DENIED without prejudice, with leave to refile after ruling on this Recommendation.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street,*

*Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of August, 2014.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge